United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDE OWENS,<br><br>   Plaintiff,<br><br>  v.<br><br>J. REED,<br><br>   Defendant. | Case No. 22-cv-08662-RFL<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 18 |

## I. INTRODUCTION

Claude Owens, a prisoner incarcerated at the Correctional Training Facility (CTF) in Soledad, California, filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Dkt. No. 1.

The Court screened the complaint and found that plaintiff had pleaded cognizable claims that his First Amendment right to be free from retaliation and his Fourteenth Amendment right to due process were violated when defendant Lieutenant Reed allegedly found him guilty of a Rules Violation Report (RVR) in retaliation for his filing a grievance against her, and denied his witnesses at the RVR hearing, respectively. Dkt. No. 6 at 2.

Defendant moved for summary judgment. Dkt. No. 18. Plaintiff filed an opposition, Dkt. No. 21, his full deposition transcript and declarations by other prisoners, Dkt. No. 21-1, and an affidavit and exhibits, Dkt. No. 21-2. Defendant filed a reply. Dkt. No. 22.

Plaintiff's opposition to summary judgment includes declarations by fellow prisoners Marlon Shelmon, Jason Smith, and Terrell Oden that defendant Reed found them guilty out of retaliation for protected conduct against other officers. Dkt. No. 21-1 at 54-64. Plaintiff also requested that the Court judicially notice some of his exhibits. Dkt. No. 21 at 10. He asks that the

1    Court take notice "as to the volume of administrative grievances submitted against Defendant
2    Reed concerning her penchant for retaliating against inmates in RVR hearings, who are known to
3    file grievances, and then Reed manipulates and falsifies the Disciplinary Hearing Results." *Id.*
4    Plaintiff's Exhibit C to the complaint, of which he asks the Court to take notice, consists of: (1) an
5    Office of Grievances decision for Oden indicating that his grievance about defendant Reed having
6    found him guilty of a lesser included charge that does not exist out of retaliation for his filing a
7    602 about another officer was referred for staff misconduct allegation (Dkt. No. 1-1 at 17-19); (2)
8    an Office of Grievances decision denying Shelmon's complaint alleging that defendant Reed had
9    falsified documents in his RVR report in order to cover up another officer's misconduct (*id.* at 21-
10   26); (3) an Office of Grievances decision disapproving Smith's complaint alleging that defendant
11   Reed found him guilty out of retaliation and denied his witnesses, because he had filed a grievance
12   about another officer (*id.* at 28-33).
13       Defendants have not opposed plaintiff's request for judicial notice, nor contested the
14   authenticity of the other prisoners' grievance responses. A federal court may take judicial notice
15   of facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). The Court grants plaintiff's
16   request and takes judicial notice of the fact that Shelmon, Smith, and Oden have filed grievances
17   alleging that defendant found them guilty of an RVR out of retaliation. The Court does not take
18   notice as to the truth of any of their allegations, which is obviously disputed.
19       For the reasons stated below, the Court will grant defendant's motion for summary
20   judgment.
21   **II.     BACKGROUND**
22       Except as otherwise noted, the following facts are undisputed on the record before the
23   Court on defendant's motion for summary judgment. The evidence is viewed in the light most
24   favorable to plaintiff. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (stating that,
25   at summary judgment, courts must view the evidence in the light most favorable to the non-
26   moving party).
27       **A.     The Rules Violation**
28       On February 18, 2022, Officer Moreno searched plaintiff's cell. Dkt. No. 21-1 (Plaintiff's

2

1    Deposition) at 25; Dkt. No. 18-1 (RVR) at 7-8.  Officer Moreno documented in the RVR, which
2    he drafted on March 2, 2022, that he found a cell phone and charger on plaintiff's bed.  Dkt.
3    No. 18-1 at 7-8.  He documented that he secured the phone and charger on his person, issued
4    plaintiff a property receipt, and asked plaintiff if they belonged to him, to which plaintiff
5    responded that they did.  *Id.*  He documented that he advised plaintiff that he would be issued an
6    RVR, and that plaintiff stated he understood.  *Id.*

7    Plaintiff states that he did not have a cell phone and Officer Moreno did not find one in his
8    cell.  Dkt. No. 21-1 at 25-26.  He states that Officer Moreno did not tell him at the time that he had
9    found a cell phone, and that the cell search receipt was not generated until 9:55 P.M. at the end of
10   Officer Moreno's shift five hours later.  Dkt. No. 21 at 2, Dkt. No. 21-1 at 26-27.  In some of
11   plaintiff's accounts, the property receipt was left under plaintiff's door without any notification,
12   and in others, plaintiff had a conversation with Officer Moreno about it.  *Id.*

### B. The Disciplinary Hearing

14   Plaintiff was served with an RVR on either March 4, according to defendant, Dkt. No. 18-1
15   at 8; or March 28, according to plaintiff, Dkt. No. 21 at 2.  Defendant Reed, who was assigned as
16   the RVR hearing officer on March 4, called plaintiff for the hearing on March 28.  Dkt. No. 18-1
17   at 7; Dkt. No. 21 at 2.  Plaintiff told defendant Reed that he had not received any prior notice of
18   the RVR, so he was given 24 hours to review the report and the hearing was postponed until the
19   next day.  Dkt. No. 21 at 2; Dkt. No. 18-1 at 3.  Plaintiff says defendant Reed accused him of
20   being a liar when he said he had not received it, but gave him the 24 hours anyway.  Dkt. No. 21-1
21   at 30.

22   On March 29, plaintiff told defendant that he wanted to call Officer Moreno, his cellmate
23   Booker, and neighboring prisoners Jordan and Clark.  Dkt. No. 18-1 at 12; Dkt. No. 21-1 at 31.
24   The hearing was then postponed again to March 31 for Officer Moreno's availability.  *Id.*

25   Defendant denied the three prisoner witnesses.  Plaintiff explained that plaintiff and
26   Booker witnessed the cell search from the first tier, at an angle but not exactly at the cell front
27   door, and that Booker would "tell you what happened."  Dkt. No. 18-1 at 12-13.  Plaintiff's
28   proposed questions for Booker were: (1) Did Officer A. Moreno state after the search that he

3

found a cell phone inside the cell? (2) Did Owens admit to Officer A. Moreno that he had a cell phone? (3) Did Officer A. Moreno come out of the cell with a cell phone? Dkt. No. 21-2 at 28. Defendant maintains that she refused to call Booker because he was outside of the cell during the search and therefore not a direct witness to the search, and plaintiff could not explain what testimony he would provide in plaintiff's defense. Dkt. No. 18-1 at 4.

Plaintiff explained that Jordan lived directly across from him, and Clark lived across from him on the third tier, so both individuals could see the search. Dkt. No. 18-1 at 13. His proposed questions for Jordan and Clark included whether they witnessed the search, whether they can see from their cell inside plaintiff's cell, whether they saw Officer Moreno confiscate a cell phone while he was in plaintiff's cell, and whether they saw Officer Moreno emerge from the cell with a cell phone. Dkt. No. 21-2 at 29-30. Defendant maintains that she refused to call Jordan and Clark because neither was in the cell for the search. Dkt. No. 18-1 at 4.

Plaintiff's proposed questions for Officer Moreno were: (1) Did you take photographs of the cell phone where you allegedly found it? and (2) Is there any physical evidence that you received the phone from BW-228? Dkt. No. 21-2 at 34. Defendant denied both questions. Defendant determined that plaintiff's first question was not relevant because "the nature of the evidence determines the series of photographs and the evidence in this matter is not felonious." Dkt. No. 18-1 at 12. Defendant determined that a response to the second question "would not provide any additional information, as a response is detailed in the RVR" in that "the phone and charger were discovered on the top bunk area" and were photographed. *Id.* Defendant asked Officer Moreno if he wrote the RVR, and if it was correct, to which he responded in the affirmative. *Id.* Defendant maintains she gave plaintiff an opportunity to ask follow-up questions at this time, and he had none; plaintiff maintains he was not provided that opportunity. *Id.*; Dkt. No. 21-2 at 4.

Defendant found plaintiff guilty. Dkt. No. 18-1 at 8. The disposition included 90 days credit loss, several months of loss of canteen and packages privileges, and one year loss of family visits. *Id.*

4

**C.     Plaintiff's Grievance Against Defendant**

In the meantime, on March 25, 2022, the CTF appeals office received a grievance plaintiff filed about defendant Reed. Plaintiff wrote that defendant Reed "is conducting a Covid scam to receive additional funding for the state and [is] threatening disciplinary actions to inmates who do not comply." Dkt. No. 18-2 at 4. He alleged that the prison administration "has given multiple inmates false positives and has even asked inmates to volunteer to move to the Covid unit to show Sacramento there's an outbreak of Covid to receive additional funding." *Id.* at 6. He alleged that the administration had bribed inmates with video visits, and that defendant Reed had threatened inmates in B wing with 128 chronos and RVRs if they did not comply to move to the Covid unit. *Id.* The Office of Grievances response dated April 6, 2022 indicated that the complaint was identified as an allegation of staff misconduct and would therefore be referred outside the grievance and appeal process to an appropriate authority within the California Department of Corrections and Rehabilitation for the purpose of gathering facts needed to prove or disprove the allegation. *Id.* at 8.

Plaintiff maintains that defendant was aware of the March 25 grievance by the March 31 hearing. He testified at his deposition that he was surprised by this because he "didn't think she knew about the staff complaint because it [was] just so recent[]." Dkt. No. 21-1 at 20. "But at the end of the RVR hearing, she did let me know that she did know about the staff complaint. . . . [S]he was . . . angry" and "very hostile towards me during the hearing." *Id.* "She told me, 'Owens, I'm not calling any of your inmate witnesses. You don't think I know about the staff complaint you wrote against me a couple days ago? I'm finding you guilty as charged, and you can appeal it if you want to.'" *Id.*

Plaintiff also alleged in his affidavit in support of his opposition to summary judgment that "when an inmate submits a staff complaint against a named staff, the Office of Grievance immediately emails that staff at their workpost or home, and informs them of the staff complaint, and that staff complaint is then automatically uploaded on Strategic Offender Management System ('SOMS'), for which is readily available to J. Reed." Dkt. No. 21-2 at 5.

Defendant Reed, in contrast, states that at the time of the hearing, she had "no present

5

1   awareness or present knowledge that Owens had filed an inmate grievance against me." Dkt.

2   No. 18-1 at 4. She "never made any statement during the hearing regarding a grievance Owens

3   filed against me," and did not recall any "personal meetings or communications with Owens other

4   than through the disciplinary hearing." *Id.*

5         Defendant submits a declaration by the CTF Grievance Coordinator confirming that the

6   attached grievance is a correct copy of plaintiff's grievance against defendant. Dkt. No. 18-2 at 1.

7   Neither the grievance coordinator's declaration, nor the grievance copy, explains or shows the

8   usual timeline and procedure for processing the grievance and whether or when defendant Reed

9   would have been or was notified about it.

## III. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must

1 be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the
2 facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

### IV. DISCUSSION

Because plaintiff has not identified triable issues of material fact with respect to his retaliation or due process claim, defendant is entitled to summary judgment on both claims.

#### A. Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

Plaintiff alleges that defendant Reed found him guilty of the RVR issued by Officer Moreno for having a cell phone in order to retaliate against him for his having filed a grievance about defendant Reed's involvement in subjecting plaintiff to a COVID scheme. Filing grievances is protected conduct and retaliation for doing so is unconstitutional. *Rhodes*, 408 F.3d at 567. But taking plaintiff's version of all the facts as true, there is not enough to defeat summary judgment because plaintiff has not demonstrated a triable issue of fact as to the fifth element, that defendant's finding him guilty did not reasonably advance a legitimate correctional goal.

Plaintiff has not alleged that defendant had any role in the search that formed the basis of the RVR, and it was Officer Moreno, not defendant, who alleged that he found a cell phone on plaintiff's bed. Even if Officer Moreno fabricated the RVR, defendant's only role was adjudicating it. Even if (1) the RVR was false, (2) defendant found plaintiff guilty of it in some part out of retaliation because he had filed a grievance about her several days before the hearing,[1]

---

[1] The Court declines defendant's invitation to find as a matter of undisputed fact that defendant could not have been aware of the grievance at the time of plaintiff's hearing. *See* Dkt. No. 18 at 12 (arguing that Reed could not have been aware of the grievance because it was "not administered by the grievance office, and no investigation into the claim had been initiated yet"). Plaintiff claims that defendant said she knew of the grievance, and defendant submits no evidence describing the process and timeline by which prison officials at CTF are informed of grievances filed against them.

7

1  and (3) plaintiff was chilled in the exercise of his protected right to file grievances against
2  correctional officers, defendant's finding plaintiff guilty still served a legitimate purpose based on
3  the information in front of defendant Reed at the hearing.  The hearing was Officer Moreno's
4  word against plaintiff's, and it was not unreasonable for defendant to credit Officer Moreno's
5  statements and report, given the information that defendant had available and the photographs that
6  Officer Moreno reported were taken of the confiscated cellphone equipment.

7        In assessing whether defendant's reliance on Officer Moreno's account reasonably
8  advanced a legitimate correctional goal, the Court must evaluate whether there was "some
9  evidence" that plaintiff had contraband.  Although the "some evidence" standard does not apply to
10 "a correctional officer's retaliatory accusation," it does to apply to "a disciplinary board's
11 proceeding" concerning that accusation.  *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).  That
12 is because of the "distinction between the institutional interests in a prison board's disciplinary
13 decision and a guard's accusation of wrongdoing."  *Hines v. Gomez*, 108 F.3d 265, 268–69 (9th
14 Cir. 1997).  Moreover, to hold otherwise would encourage gamesmanship because, after being
15 charged with a rules violation and assigned a hearing officer, prisoners could just file a grievance
16 about the hearing officer in order to defeat the deferential "some evidence" standard of review.
17 Plaintiff has sued defendant Reed for her adjudication of the alleged rules violation during a
18 disciplinary proceeding, not for making an allegedly retaliatory accusation in the first place.  As
19 such, the "some evidence" standard still applies to plaintiff's claim, and defendant Reed's reliance
20 on Officer Moreno's statements and report more than satisfy that requirement.

21       The attenuated nature of plaintiff's retaliation claim also undermines the second element of
22 causation.  A First Amendment retaliation claim is defeated on causation where the defendant can
23 show that they would have reached the same decision absent the plaintiff's protected conduct.
24 *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002) (applying the *Mt. Healthy City School*
25 *District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977), framework to a First Amendment
26 retaliation claim).  There is not enough here to put the question to a jury whether defendant Reed
27 would have found plaintiff innocent if he had not filed a grievance against her.  Defendant's
28 declaration explains why she reached the conclusion that she did based on the evidence before

her.[2] Plaintiff has submitted no direct or circumstantial evidence from which a reasonable juror could infer that defendant would have reached a different conclusion if no grievance had been filed against her.

Plaintiff has not raised a triable issue of fact as to whether defendant retaliated against him, and summary judgment is appropriate for defendant on this claim.

**B.     Due Process**

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of life, liberty or property. *Bd. of Regents v. Roth*, 408 U.S. 564, 570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995) ("The more familiar office of the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state."). In the prison context, the interests protected by the Due Process Clause are generally ones pertaining to liberty. In certain circumstances, however, the loss of an inmate's property may also trigger the Due Process Clause. *See, e.g.*, *Shinault v. Hawks*, 782 F.3d 1053 (9th Cir. 2015) (concluding that the Due Process Clause was implicated where prison officials froze an inmate's trust account).

Analysis of a due process claim "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219–20 (2011).

Plaintiff is serving an indeterminate sentence of 25 years to life. Dkt. No. 21-1 at 15; *see also People v. Owens*, No. C091455, 2020 WL 7415267, at *1 (Cal. Ct. App. Dec. 18, 2020). According to the California Incarcerated Records and Information Search, plaintiff is tentatively scheduled for a parole hearing to take place in August of 2026.[3] Although there may be differences in the applicability of due process protections to proceedings resulting in credit loss for

---

[2] Defendant has not stated in her declaration that her decision would have been the same if plaintiff had not filed a grievance, but she has stated that she was unaware of the grievance and that it played no role in her decision. Dkt. No. 18-1 at 5.

[3] California Incarcerated Records and Information Search, https://apps.cdcr.ca.gov/ciris/details?cdcrNumber=F06356 (last visited June 10, 2024).

9

someone with a determinate versus an indeterminate California sentence, *see, e.g.*, *Barno v. Padilla*, No. 20-CV-03886-SI, 2020 WL 6544427 at *3 (N.D. Cal. Nov. 6, 2020), defendant has not contested plaintiff's liberty interest in the RVR proceedings here or argued that procedural due process protections do not apply. Assuming therefore that plaintiff had a liberty interest in the disciplinary proceeding, the Court finds he received the process he was due.

The procedural protections for prison disciplinary proceedings resulting in possible loss of good time credits established by *Wolff v. McDonnell*, 418 U.S. 539, 563-566, 570 (1974) are: (1) "written notice of the charges"; (2) of at least 24 hours before a hearing, (3) "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action"; (4) the ability to call witnesses and present evidence in one's defense when not "unduly hazardous to institutional safety or correctional goals," and (5) assistance in defense where the charged prisoner is illiterate or the issues are complex.

Plaintiff does not dispute that the hearing was held more than 24 hours after he received written notice of the charges. Nor does he contest that he received a written statement explaining defendant's findings. He has not alleged that he is illiterate or that the issues presented in his hearing were complex. He alleges that his due process rights were violated because defendant did not call his prisoner witnesses and did not ask his questions of Officer Moreno.

The Supreme Court in *Wolff* identified the right to call witnesses as restricted by prison officials' discretion "to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements." 418 U.S. at 566. The Court listed "irrelevance" and "lack of necessity" as examples of valid reasons to refuse the right to call certain witnesses. *Id.* It also specifically held that the Due Process Clause does not require that prisoners be allowed to cross-examine their accusers. *Id.* at 567-68. Plaintiff therefore did not have the unqualified right to call witnesses of his choice, nor to ask the questions of his choice. Plaintiff's cellmate had no testimony about the search itself as he, like plaintiff, was out of view of the search. Although he could have testified that plaintiff did not admit to ownership of the cell phone, defendant based her guilty finding on Officer Moreno's report and testimony that he found the cellphone on plaintiff's bed, not on

plaintiff's alleged admission. Dkt. No. 18-1 at 14. And, though the cellmate might have testified that he did not see Officer Moreno carrying the cell phone when he exited the cell, there is no evidence that Officer Moreno was carrying the phone in a manner that would be visible to the cellmate. Excluding the cellmate's testimony on the basis of lack of materiality or necessity was therefore not unconstitutional.

Nor was defendant's decision not to call the other two prisoners as witnesses, because they were not directly inside or in front of the cell, unconstitutional. While it could be debatable that they might have had a reasonable view of the search, despite not being directly in front of the cell, and therefore had relevant testimony, it was not arbitrary or an abuse of defendant's discretion as the hearing officer to determine that they did not. She applied a reasonable bright-line rule that only someone standing very near the cell could have seen whether Officer Moreno found a cell phone and charger on plaintiff's bed, or whether Officer Moreno had a cellphone with him when he came out of the cell. See, *e.g.*, *Williams v. Farley*, No. CV 20-4490-PA (KK), 2020 WL 6044549, at *6 (C.D. Cal. Oct. 13, 2020) (no due process violation in refusal to call a witness without relevant information).

As for plaintiff's questions for Officer Moreno, defendant determined within her discretion that the questions were not relevant and would not provide additional information. Plaintiff's first question sought to determine whether Officer Moreno photographed the cell phone and charger on the bed where he allegedly found them, but the photographs in the record that Officer Moreno took, which were not taken at that location, spoke for themselves in answering that question. The photographs (which are referred to but are not in the record in front of this Court) were taken elsewhere.

Further, plaintiff's insistence that Officer Moreno was required to photograph the items in the location they were discovered was based on an outdated 2007 memorandum. *See* Dkt. No. 21-2 at 25 (September 7, 2007 memorandum directing CDCR staff to photograph cell phones prior to removing them from the area). That memorandum predated CDCR regulations that added prohibitions on cell phones as contraband to the regulatory scheme. *See* 15 Cal. Code. Regs sections 3006, 3315; *see also* 2011 CA REG TEXT 279316 (NS) (proposed regulation adding cell

1  phones as contraband in 2011). Those regulations supersede the 2007 memorandum by dictating
2  how contraband generally (including cell phones) should be handled during cell inspections.
3  Section 3287 identifies procedures for cell inspections, and indicates that a prisoner "will be given
4  a written notice [that] will . . . list any contraband picked up or any breach of security noted during
5  the inspection, and the follow-up action intended by the inspecting officer." It does not require
6  photographs of the contraband during the cell inspection.[4]

Plaintiff also relies on requirements about photographing evidence in "Operational Procedure 144—Evidence Collection and Disposition," but that procedure applies only to the "Evidence Collection and Disposition process at the Correctional Training Facility (CTF) during an incident." Dkt. 21-2 at 19. Officer Reed found in the RVR disposition that Operational Procedure 144 applied to "felonious contraband" requiring a need to "secure a crime scene, capture the contraband in an undisturbed state, or confiscate the associated indicia" and therefore inapplicable to a cell phone. Dkt. No. 18-1 at 14. Her refusal to ask Officer Moreno the question about where he photographed the cell phone and charger was within her discretion.

Plaintiff's second proposed question for Officer Moreno was whether there was physical evidence linking the phone to his specific cell. Defendant denied the question because it would not provide additional information, because defendant considered Officer Moreno's own testimony as adequate evidence of the location where he found the phone. Dkt. No. 18-1 at 12. Assuming for the sake of argument that Officer Moreno would have answered that no physical evidence linked the phone to plaintiff's specific cell, there is no reason to infer that this information would have been relevant to defendant's decision, since she credited Officer Moreno's testimony. Defendant was therefore within her discretion in refusing the question.

Defendant did not violate plaintiff's procedural due process rights, and summary judgment is appropriate in her favor on this claim.

## V.  CONCLUSION

For the reasons identified above, defendant Reed's motion for summary judgment is

---

[4] This language is in the version of the regulation in effect at the time of the search at issue in this lawsuit, as well as the current version.

GRANTED.

The Clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

Dated: June 25, 2024

RITA F. LIN
United States District Judge